UNITED STATES, Appellee

v

BERNARD WARNER STEWART, Airman,
U. S. Navy, Appellant

19 USCMA 417, 42 CMR 19

No. 22,498

May 15, 1970

*Lieutenant Allen D. Black*, JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief were *Ralph E. Elliott, Jr., Esquire*, and *Captain Frank A. Nelson*, JAGC, USN.

*Captain Patricia A. Murphy*, USMC, argued the cause for Appellee, United States. With her on the brief was *Lieutenant Colonel Charles J. Keever*, USMC.

### Opinion of the Court

FERGUSON, Judge:

The accused was convicted of one specification (Charge I) of attempting to willfully destroy the engine of an F8C aircraft "with intent to injure, interfere with or obstruct the national defense of the United States, in violation of Title 18, United States Code, Section 2155,"[1] and one specification (Charge II) of attempting to willfully destroy military property of the United States (the engine of the same aircraft), in violation of Articles 134 and 80, Uniform Code of Military Justice, 10 USC §§ 934 and 880, respectively. His sentence, as the case reaches this Court, extends to a bad-conduct discharge, total forfeitures, confinement

---

[1] Title 18, United States Code, section 2155, provides in pertinent part:

"(a) Whoever, with intent to injure, interfere with, or obstruct the national defense of the United States, willfully injures, destroys, contaminates or infects, or attempts to so injure, destroy, contaminate or infect any national-defense material, national-defense premises, or national-defense utilities, shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

at hard labor for two years, and reduction to E-1. We granted review on the following issue:

"PROPERLY CONSTRUED, THE SABOTAGE ACT DOES NOT REACH THE APPELLANT'S CONDUCT."

The facts are not in dispute. The record reflects that the accused was observed throwing a pipe and chain into the air intake duct of an F8C jet aircraft. Routine examination of the plane prior to use revealed the presence of these articles and they were removed without damage to the aircraft. A Government witness testified that prior to the incident, the accused told him that he would like to find a way to get out of going on another cruise to the Mediterranean. When the accused decided that "fodding the aircraft['s]" (foreign object damage) engine would be a good way, the witness handed him a pipe and chain which he found lying on the ground. While walking behind the accused, the witness observed him throw these objects into the air intake duct of a nearby aircraft. As he did so the accused allegedly asked the witness, " 'I wonder if Mr. Eichorn [the line division officer] saw me.' " Testimony was adduced that this aircraft and its engine were assigned to a squadron at Key West, Florida, whose mission was the air defense of the United States. However, it was admitted that an F8C could also be used for liberty hops on occasion.

As noted above, the accused was charged with two specifications alleging a violation of separate criminal statutes. The evidence pertaining to each was the same, however, and they were treated as one offense for the purpose of determining an appropriate sentence. The only difference lay in the elements of proof for, unlike Charge II, which was in actuality an attempt to violate Article 108, Code, supra, 10 USC § 908,[2] Charge I required a specific finding beyond a reasonable doubt that the accused by his action in attempting to damage the aircraft "intended to injure, interfere with, or obstruct the National Defense of the United States." Article 108 requires no such intent—only that the damage, destruction, or loss result from willful action or by reason of neglect.

Appellate defense counsel contend that there was *no* evidence of the required intent to violate section 2155; rather, that the accused's intent was to avoid service of another tour of duty overseas. The Government averred that his desire to avoid duty was not his intent but his motive; that "a person need only intend to injure or interfere with the national defense of the United States—he does not have to intend to be a 'subversive' person committing a 'subversive' act."

Our research has failed to uncover any reported civilian cases reflecting prosecution under section 2155, and none have been called to our attention. Only United States v Reyes, 30 CMR 776 (AFBR 1960), and United States v Meeker, NCM 63–00102 (NBR April 19, 1963), both court-martial prosecutions, are in point. *Reyes* was convicted of violating both Article 108, Code, supra, and section 2155, Title 18, United States Code, by reason of having cut certain wires of a B-52 aircraft. He had been posted as a relief guard for the aircraft and, because he had not been previously trained, he decided to call attention to what he considered lax security measures. His conviction of violating section 2155, to which he pleaded not guilty, was reversed because of an instructional error by the law officer and because he foreclosed defense counsel from pursuing a line of inquiry designed to disclose the mission of the aircraft at the time of its

[2] Article 108, Uniform Code of Military Justice, 10 USC § 908, provides:
"Any person subject to this chapter who, without proper authority—

. . . . .

(2) willfully or through neglect damages, destroys, or loses; or

. . . . .

any military property of the United States, shall be punished as a court-martial may direct."

damage, on the ground that classified information was involved. Since the board of review did not believe that the errors extended to the finding with reference to the Article 108 offense, to which the accused pleaded guilty, it affirmed his conviction thereof and reassessed the sentence. In discussing the question of an accused's intent under the Title 18 offense and an allegation that the evidence was insufficient in law to support a conviction thereunder, the board stated, at page 783:

". . . As we shall discuss later, there was a real issue as to his specific intent to interfere with the national defense of the United States, but when we apply the test of *legal* sufficiency, we are satisfied that a member of the court could reasonably have drawn such a conclusion from the evidence before him (cf. U. S. v Albright (No. 10,495), 9 USCMA 628, 26 CMR 408 [1958]). Because of our conclusions hereafter, we need not determine whether we would have reached such a finding of fact."

In the case at bar, the Court of Military Review, one member dissenting, relied upon the language of *Reyes* in affirming the accused's conviction under section 2155. The dissenting member would have reversed the accused's conviction under this section for lack of evidence of intent to interfere with or obstruct the national defense.

We believe their reliance and affirmance was misplaced. See United States v Meeker, supra.

In this case, the law officer informed the court of the specific provisions of section 2155, Title 18, United States Code. He then instructed them that in order to convict the accused of the charged offense, the burden was on the Government to establish by legal and competent evidence beyond a reasonable doubt that: The accused attempted to destroy the engine of the designated aircraft; the engine was national defense material; and "[*t*]*hat the accused thereby intended to injure, interfere with, or obstruct the National De-fense of the United States.*" (Emphasis supplied.)

With regard to the question of intent, the law officer instructed:

". . . In this regard, you are advised that intent ordinarily cannot be proved by direct evidence, unless, for example, the accused has been overheard to make a statement of his intent. You are advised the accused's intent may be proved by circumstantial evidence, that is, by facts and circumstances from which you may, according to the common experience of mankind, reasonably infer the existence of an intent. You must, however, consider all the evidence in the case, in determining the issue of intent. The weight, if any, to be given an inference of the accused's intent, of course depends upon the circumstances attending the proved facts which give rise to the inference, as well as all the other evidence in the case. It is for you to make this determination."

We find no fault with the law officer's instructions. They properly presented the issues which the court had to decide. The difficulty we find with this case is that there is simply *no direct evidence* that the accused acted with the specific intent to "injure, interfere with, or obstruct the national defense of the United States." There is evidence from which it might be inferred that he attempted to injure or destroy a specific aircraft engine and that engine was properly classified as "national defense material." However, unless the necessary intent to commit sabotage can be reasonably inferred from the fact of the act itself, the accused's conviction must fall for lack of sufficient evidence.

The law officer instructed that "the accused's intent [to commit sabotage] may be proved by circumstantial evidence, that is, by facts and circumstances from which you may, *according to the common experience of mankind, reasonably infer the existence of an intent.*" (Emphasis supplied.) The question thus posed in this case is whether the drawing of such an infer-

ence, from the facts in evidence, is reasonable according to the common experience of mankind. We think not.

Disregarding the accused's reason for fodding the aircraft engine—the Government classified his desire to avoid another Mediterranean cruise as his motive and not his intent—the record reflects that the accused, a flight line crew member, threw a chain and pipe into the air intake duct of a jet engine. Because of his employment on the line and the training he had received, it is logical to assume that he was aware of the damage that *could* result if the engine was started prior to removal of the foreign objects. The record also disclosed that he committed the act in the presence of another, the line division officer was standing at a nearby window at the time, and the accused told a third seaman that he had fodded an aircraft.

We agree with the view of the dissenting member of the Court of Military Review that it is apparent that had the accused been intent on interfering with the national defense of the United States he would have acted in a more surreptitious manner and not so openly. This was the same view held by the board of review in United States v Meeker, supra, where, in an almost identical case, the accused's conviction for violation of section 2155 was reversed for lack of evidence of the necessary criminal intent. We do not believe that an inference of an intent to commit the offense of sabotage, as set forth in the specification of Charge I, can be reasonably inferred from this evidence. United States v Meeker, supra.

The accused's conviction under Charge I is reversed and the charge and its specification are ordered dismissed. The record of trial is returned to the Judge Advocate General of the Navy. The Court of Military Review may reassess the sentence on the basis of the remaining finding of guilty or a rehearing on sentence may be ordered.

Chief Judge QUINN and Judge DARDEN concur.